IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY RODRIGUEZ, | § | |
| TDCJ #656188, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0877 |
| | § | |
| RAYMOND NEUSE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Roy Rodriguez filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. Pending before the Court is a joint motion for summary judgment by Defendants Raymond Neuse and Kenneth W. Lee. (Docket Entry No. 10). Rodriguez has not filed a response, and his time to do so has expired. After considering all of the pleadings, the evidence, and the applicable law, the defendants' motion for summary judgment is granted and this case is dismissed for reasons set forth below.

## I.   BACKGROUND

Rodriguez is presently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Rodriguez sues Raymond Neuse, who is employed by the University of Texas Medical Branch ("UTMB") as a mental health care worker for inmates incarcerated in TDCJ. Rodriguez also sues Kenneth W. Lee, who is employed by TDCJ in the "Security Threat Group Management Office" at the Estelle High

Security Unit, where Rodriguez presently resides.[1]

Rodriguez entered TDCJ in 1994 to begin serving a thirty-year prison sentence that he received as the result of a murder conviction. Rodriguez reportedly has been housed in administrative segregation since 1994, because of his membership in a Security Threat Group.[2] Specifically, Rodriguez was identified as a member of a gang known as the Texas Syndicate. Rodriguez renounced his gang membership in July of 2002. Rodriguez is currently on the waiting list to participate in the Gang Renunciation and Disassociation ("GRAD") program, which is a prerequisite to his release from administrative segregation to the general population.

Rodriguez alleges that he contacted the Security Threat Group Management Office Program Administrator for the Estelle Unit (Lee) in October of 2004, complaining that his continued confinement in administrative segregation while awaiting placement in the GRAD program was causing him to suffer a mental health disorder known as "reduced environmental stimulation" syndrome. Rodriguez apparently asked to be transferred to the GRAD program immediately or to be released from administrative segregation while awaiting his placement in that program. That request was apparently denied because

---

[1]     The complaint also names TDCJ Director Doug Dretke, "Medical Complaint Coordinator" Jason Chavers, and Medical Director Glenda Adams. The Court did not request an answer from these defendants because, for reasons discussed below, the complaint fails to state a claim against these supervisory officials.

[2]     The record indicates that Rodriguez was placed in administrative segregation at the Estelle High Security Unit in Huntsville, Texas, in April of 2002. (Docket Entry No. 10, Exhibit 1, *Security Threat Group File*).

2

Rodriguez's records contained no diagnosis for a mental disorder.  Rodriguez reports that he requested help from a staff psychologist (Neuse) in November of 2004, but was not given the assistance he desired, namely, expedited release from administrative segregation.

Rodriguez contends that, by failing or refusing to expedite his placement in the GRAD program, the defendants have acted with deliberate indifference to a serious medical or psychiatric condition in violation of the Eighth Amendment to the United States Constitution, for which he has been denied treatment.  Rodriguez seeks compensatory damages of $800,000.00 for pain, suffering, and "emotional distress."  Rodriguez also seeks release from administrative segregation.  The defendants have filed a joint motion for summary judgment, arguing that Rodriguez's claims fail as a matter of law.  The defendants argue further that they are entitled to qualified immunity from suit.  The parties' contentions are addressed below under the governing standard of review.

## II.   STANDARD OF REVIEW

The defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A movant's burden is to point out the absence of evidence supporting the nonmovant's case.  *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citations

omitted)citing *Celotex*, 477 U.S. at 323; and *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.  *Malacara*, 353 F.3d at 404 (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

A material fact is one that "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Genesis Ins. Co. v. Wausau Ins. Co.*, 343 F.3d 733, 735 (5th Cir. 2003) (citing *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 456 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, all the evidence introduced and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the nonmoving party." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  A reviewing court may not "step into the stead of the jury and weigh the evidence in a search for truth, but is instead to determine whether there exists a genuine issue for trial." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003); *see also Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (stating that in deciding whether summary judgment was properly granted, "this court will not weigh the evidence or evaluate the credibility of witnesses.").

The nonmovant's burden is not met by mere reliance on the allegations or denials in

4

the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377,

380 (5th Cir. 1998); *see also Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir.

1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary

judgment evidence.").  Likewise, vague and conclusory assertions cannot defeat a properly

supported motion for summary judgment.  *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572,

577 (5th Cir. 2003).  The Fifth Circuit has emphasized that the non-moving party does not

demonstrate the existence of a genuine issue of fact (and does not thereby avoid summary

judgment) by asserting "some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid

Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotation

marks omitted); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)

(explaining that "conclusory allegations, speculation, and unsubstantiated assertions are

inadequate to satisfy the nonmovant's burden" at the summary judgment stage).  In the

absence of proof, a reviewing court will not assume that the nonmovant could or would

prove the necessary facts.  *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*,

66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26

(5th Cir. 1995).

  The plaintiff proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se*

litigants under a less stringent standard than those drafted by attorneys.  *See Haines v.

Kerner*, 404 U.S. 519 (1972).  Pleadings filed by a *pro se* litigant are entitled to a liberal

construction that affords all reasonable inferences which can be drawn from them.  *See*

5

*Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

As noted above, the plaintiff has not filed a response to the motion for summary judgment.  According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended.  Any failure to respond is taken as a representation of no opposition.  S.D. TEX. R. 7.4.  The Court specifically directed the plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution.  (Docket Entry No. 5, ¶ 4).  Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default.  *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).  "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule."  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279).  In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed.  *See Hetzel*, 50 F.3d at 362 n.3.  However, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion.  *See Eversley v. MBank Dallas*, 843 F.2d 172, 174

6

(5th Cir. 1988).

## III.   **DISCUSSION**

The defendants argue that they are entitled to summary judgment dismissing Rodriguez's claims on the merits because he has failed to establish that their actions violated a constitutional right.  The defendants argue secondarily that they also are entitled to qualified immunity from Rodriguez's claims.  Public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even if a defendant's actions have violated a constitutional right, qualified immunity is nonetheless appropriate if "the defendant's actions were 'objectively reasonable' with reference to 'clearly established law' at the time of the conduct in question." *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (quoting *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998)).

At the summary judgment stage of this case, a determination of whether a constitutional right was violated is coterminous with the merits of the defendants' issues raised on summary judgment.  Accordingly, the Court first addresses the summary judgment motion on the merits of the claims that Rodriguez asserts, and then turns to the second prong of the qualified immunity analysis, if necessary, regarding whether the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004).

A.     **Eighth Amendment**

Rodriguez complains that his continued confinement to administrative segregation constitutes cruel and unusual punishment, and that prison officials have refused to expedite his placement in the GRAD program in deliberate indifference to his mental health.  The defendants maintain that Rodriguez is appropriately housed in administrative segregation because the Texas Syndicate is a recognized Security Threat Group.  (Docket Entry No. 10, Exhibit 1, *Affidavit of Sigifredo Sanchez*).  Rodriguez, who entered TDCJ in 1994 following a conviction for murder, does not dispute that he was a member of the Texas Syndicate from 1990 through the time that he renounced that membership in 2002.

The Texas Syndicate is recognized as one of at least five major prison gangs in this country, along with the Aryan Brotherhood, the Black Guerrilla Family, the Mexican Mafia, La Nuestra Familia.  *See Johnson v. California*, — U.S. —, 125 S. Ct. 1141, 1162-63 (2005).  Prison gangs present a serious threat to institutional security, and correctional officials have the authority and the responsibility to eliminate their presence from the prisons.  *See, e.g., Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) (discussing gang-related threats to institutional security and safety, and observing that unchecked "violence in a prison may create unconstitutional conditions of confinement"); *Madrid v. Gomez*, 889 F. Supp. 1146, 1240-41, 1278 (N.D. Cal. 1995) (outlining evidence showing that gang members and associates are threats to prison security, and that inmates who join such gangs join "for life"); Ira J. Silverman, *Corrections: A Comprehensive View* ch. 12 (2d ed. 2001) (detailing the problems posed by security threat groups and prison gangs, including the Texas Syndicate).

8

Because the gang poses a threat to prison security, the Texas Syndicate is recognized as a Security Threat Group by TDCJ and its members may be assigned to administrative segregation. *See, e.g., Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (upholding a decision by TDCJ to place an inmate in administrative segregation because of his membership in the Texas Syndicate prison gang).

Placement in administrative segregation, standing alone, is not sufficient to establish a constitutional violation. *See, e.g., Wilkinson v. Austin*, — U.S. —, 125 S. Ct. 2384 (2005); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.), *cert. denied*, 527 U.S. 1041 (1998); *Pichardo*, 73 F.3d 612-13. Rodriguez does not challenge the decision to place him in administrative segregation because of his gang membership. Likewise, Rodriguez does not challenge the requirement that he complete the GRAD program, for which there is a lengthy waiting list, before being released from administrative segregation into the general population. In this case, Rodriguez complains that the defendants' refusal to move him to the top of the waiting list for participation in GRAD was deliberately indifferent to a serious medical or psychiatric condition, for which he has been denied adequate care.

It is well settled that the United States Constitution does not require comfortable prisons. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, it is equally well established that conditions of confinement "must not involve the wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347. In that respect, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded "humane conditions of confinement," including

adequate food, shelter, clothing, and medical care. *Farmer*, 511 U.S. at 832.

A prison official's "deliberate indifference to serious medical needs of prisoners" can constitute "unnecessary and wanton infliction of pain" of the type proscribed by the Eighth Amendment and actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In that context, it is "obduracy and wantonness, not inadvertence or error in good faith," that characterizes the conduct prohibited by the Eighth Amendment, "whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Thus, the prison official's state of mind must be examined to determine whether the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference." *Bradley*, 157 F.3d at 125 (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). The deliberate indifference standard has both an objective and subjective component. *See Farmer*, 511 U.S. at 834. To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

To satisfy the objective component of the deliberate indifference standard, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A serious medical condition is one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.  *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005)).   In this case, Rodriguez alleges that his lengthy confinement in administrative segregation has caused him to suffer a mental disorder ("reduced environmental stimulation" syndrome), and that the defendants' refusal to expedite his placement in GRAD or release him to the general population while awaiting such placement was deliberately indifferent to this serious psychiatric condition. "Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances." *Madrid v. Gomez*, 889 F. Supp. 1146, 1230 (N.D. Cal. 1995).  At least one physician, Dr. Stuart Grassian of the Harvard Medical School, has found that prolonged solitary confinement can cause symptoms such as "perceptual distortions, hallucinations, hyperreponsivity to external stimuli, aggressive fantasies, overt paranoia, inability to concentrate, and problems with impulse control," a series of symptoms that Dr. Grassian has classified as "Reduced Environmental Stimulation," or "RES."  *Id*. at 1230 (citing reports authored by Dr. Grassian and others about the ill effects of solitary confinement); *see also Davenport v. DeRobertis*, 844 F.2d 1310, 1313, 1316 (7th Cir.) (noting that "there is plenty of medical and psychological literature concerning the ill effects of solitary confinement"), *cert. denied*, 488 U.S. 908 (1988).

The defendants contend that Rodriguez satisfies neither the objective nor the

subjective prong of the deliberate indifference standard because there is no evidence that Rodriguez suffered from a serious medical or mental condition, or that the defendants were aware of and intentionally ignored an excessive risk to his health or safety.  In that respect, the defendants argue that Rodriguez has been evaluated appropriately, and that there has been no deliberate indifference to a "diagnosable psychiatric disorder" in connection with the conditions of his continued confinement in administrative segregation while awaiting placement in the GRAD program.  In support, the defendants have provided an affidavit from William H. Reading, a physician and psychiatrist employed by UTMB as the Clinical Director of TDCJ's Jester IV Unit, which operates as an inpatient psychiatric facility for TDCJ.  (Docket Entry No. 10, Exhibit 2, *Reading Affidavit*).

Dr. Reading observes at the outset that, while Rodriguez is confined in administrative segregation, he is not being held in solitary confinement of the sort likely to cause sensory deprivation associated with RES.  (*Reading Affidavit*, at 2).  Commenting that prison cells in general are not considered to be "environmentally stimulating" places, Dr. Reading notes further that Rodriguez is offered and regularly participates in out-of-cell activities, such as recreation.  (*Id.*).  According to Dr. Reading, the medical records reflect that Rodriguez has been personally interviewed and his mental status has been evaluated regularly since his assignment to administrative segregation.  (*Id.* at 2-3).  Since Rodriguez first complained of experiencing mental distress as the result of reduced environmental stimulation syndrome

in October of 2004, Rodriguez has been evaluated numerous times.[3]  (*Id.*).  Dr. Reading

reports that these evaluations have revealed no "signs and symptoms sufficient to satisfy the

diagnostic criteria contained in the Diagnostic and Statistical Manual of Mental Disorders

(DSM-IV) for any psychiatric disorder."  (*Id.* at 3).  Although Rodriguez complained of

feeling "stress" and "anxiety," he did not report any "depression, hallucinations, or suicidal

ideation."  (*Id.*).  Dr. Reading notes that Rodriguez has been observed to attend out-of-cell

activities regularly, that he has not exhibited any marked changes in his behavior or

appearance, and that his medical condition is generally good.[4]  (*Id.* at 3-4).  Based on his

review of the records and his experience with diagnosis and treatment of psychiatric

disorders and mental conditions within the correctional system, Dr. Reading concludes as

follows:  (1) Rodriguez does not suffer from a diagnosable psychiatric disorder; and (2) the

defendants adequately examined and evaluated Rodriguez for signs or symptoms of a

diagnosable psychiatric disorder in accordance with the governing policies and acceptable

standards of practice within the correctional system.  (*Id.* at 1).

As noted above, to prevail in this case Rodriguez must demonstrate that he suffered

from a serious medical or mental disorder and that the defendants were aware of his

condition but were deliberately indifferent to his plight.  *See Domino v. Texas Dep't of*

---

[3]    Dr. Reading's affidavit and the available medical records reflect that, since he raised the issue of his mental state, Rodriguez has been seen and evaluated on November 8, 2004, November 10, 2004, November 23, 2004,  January 18, 2005, February 4, 2005, February 7, 2005, March 3, 2005, March 8, 2005, and April 8, 2005.  (Docket Entry No. 10, Exhibits 2 and 3).

[4]    The only medical problem of note suffered by Rodriguez appears to be a case of hypertension, for which he has been prescribed medication.  (*Reading Affidavit*, at 4).

*Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The Fifth Circuit has stated that the deliberate indifference standard is an "extremely high" one to meet. *See Domino*, 239 F.3d at 756. The complaint and attached memorandum allege that "security" personnel would not remove Rodriguez from administrative segregation without a recommendation from Neuse. The complaint and the Step 2 Grievance filed by Rodriguez allege that Neuse "negligently refus[ed] to assist [Rodriguez] with [his] mental problem." Allegations of "mere negligence in failing to supply medical treatment," however, will not suffice in the context of an Eighth Amendment claim. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."), *cert. denied sub nom. Stewart v. Knutson*, 528 U.S. 906 (1999). Instead, the plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (citations omitted).

Rodriguez has not filed a response to the summary judgment, and the record discloses nothing to rebut Dr. Reading's conclusion that adequate treatment and attention to Rodriguez has been provided. Any allegation by Rodriguez that he was intentionally ignored or denied care is refuted by the medical records, which show that he was examined on a regular basis and found to suffer no symptoms of a psychiatric condition. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). To the extent that Rodriguez is dissatisfied with the level of his

treatment or with the diagnoses, and the resulting prison assignment, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart*, 174 F.3d at 535; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). It is well established that only "deliberate indifference" implicates a constitutional violation in this context. *See Farmer*, 511 U.S. at 835; *Wilson*, 501 U.S. at 297. Thus, allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind. *See Wilson*, 501 U.S. at 297; *Stewart*, 174 F.3d at 534; *see also Domino*, 239 F.3d at 756 (noting that "an incorrect diagnosis does not amount to deliberate indifference").

The record contains no evidence that Rodriguez has suffered from a diagnosable psychiatric disorder, or that prison officials were aware that he suffered from such a condition but deliberately disregarded the symptoms when deciding to continue his confinement in administrative segregation. Rather, the record reflects that Rodriguez was examined consistently and that he has not been denied care for a mental illness or any other condition while awaiting placement in the GRAD program. It follows that Rodriguez has not raised a genuine issue of material fact on whether, by refusing to expedite his

participation in the GRAD program or release him from administrative segregation, the defendants were deliberately indifferent to a serious medical or psychiatric condition in violation of the Eighth Amendment.   Therefore, the defendants are entitled to summary judgment on this issue.

### B.   Qualified Immunity

The defendants argue further that, based on the allegations made in this case, they are entitled to qualified immunity on all of Rodriguez's claims against them.  As noted earlier, public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Officials sued in their individual capacities are protected by qualified immunity unless the alleged act violates a constitutional right that was clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466-67 (5th Cir. 1998).  "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions."  *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004).  The first step has two parts: First, the Court must decide whether the plaintiff alleged a constitutional violation, and the

16

violation is of a clearly established constitutional right.  *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  To be "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  There need not be prior case law directly on point for a constitutional right to be clearly established, "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (internal quotation marks omitted).  If the defendants' actions violated a clearly established constitutional right, the final step of the qualified immunity analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537.

For reasons explained above, Rodriguez has not shown that the defendants' conduct violated his constitutional rights under the Eighth Amendment.  Thus, Rodriguez has not raised a genuine issue of material fact on whether the defendants committed a constitutional violation, the first prong of the qualified immunity analysis.  The Supreme Court has held that if the defendants' conduct did not violate a constitutional right, then the defendant is entitled to qualified immunity and it is unnecessary to consider whether the asserted right was "clearly established." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003); *see also Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 577 (5th Cir. 2002) (finding that, because plaintiff's First Amendment retaliation claim failed, the defendants were entitled to qualified

immunity because plaintiff failed to establish a constitutional violation under the first prong of the qualified immunity analysis).

Even assuming there was a constitutional violation, the defendants argue that Rodriguez fails to show that his expedited placement in the GRAD program or release from administrative segregation was required by clearly established law or that their actions were objectively unreasonable under the circumstances. A defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional right. *Thompson,* 245 F.3d at 457 (citations omitted) (emphasis in original). The subjective belief of the plaintiff as to the reasonableness of the officers' actions is irrelevant to the qualified immunity issue. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1184 (5th Cir. 1990). "[E]ven an officer who subjectively intends to act unreasonably is entitled to immunity if his actions are objectively reasonable." *Id*. at 1187. Therefore, "subjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity . . . just as an officer's good intent is irrelevant when he contravenes settled law." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000).

At the summary judgment stage of a § 1983 action, a defendant asserting qualified immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses. "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity. Once the

[movant] *asserts* this affirmative defense, the burden *shifts* to the plaintiff to rebut it."
*Cousin v. Small*, 325 F. 3d 627, 632 (5th Cir. 2003) (citations omitted) (emphasis in
original).  The plaintiff bears the burden of negating the defendants' claim of qualified
immunity.  *See Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489-90 (5th Cir. 2001); *Foster v. City
of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994); *Salas v. Carpenter*, 980 F.2d 299, 305-06
(5th Cir. 1992).

Rodriguez, who has not responded to the summary judgment motion in this case, has
not met his burden to demonstrate a genuine fact issue that the defendants' conduct was
objectively unreasonable.  *See Lampkin v City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.
1993) (To avoid summary judgment, a plaintiff must present evidence to raise a fact issue
"material to the resolution of the questions whether the defendants acted in an objectively
reasonable manner in view of the existing law and facts available to them."), *cert. denied*,
511 U.S. 1019 (1994).

Rodriguez does not dispute that he was a long-term member of the Texas Syndicate
or that prison officials were authorized to confine him to administrative segregation because
of his affiliation with a Security Threat Group.  *See Pichardo*, 73 F.3d at 613.  The record
reflects that Rodriguez was promptly placed on the waiting list to enroll in the GRAD
program in 2002, shortly after he renounced his membership in the Texas Syndicate. (Docket
Entry No. 12, Exhibit 1).  Rodriguez does not point to any precedent, and the Court's
research has not disclosed any, which holds that a long waiting period for placement in the
GRAD program is, in and of itself, a constitutional violation.  The record shows that, during

his stay in administrative segregation, Rodriguez was seen and evaluated by mental health care professionals who found that he did not exhibit signs and symptoms of a psychiatric condition. Rodriguez offers nothing to refute the record and he does not otherwise show that he manifested symptoms associated with a diagnosable psychiatric disorder. Rodriguez's bare allegation that he suffers from psychiatric condition that has been ignored by prison officials is not enough to carry his burden to defeat the qualified immunity defense, and does not suffice to subject government officials to the costs of a trial. *See Al-Ra'id v. Ingle*, 69 F.3d 28, 33 (5th Cir. 1995).

Rodriguez has not raised a genuine issue of fact showing that a reasonable official would have known that he was suffering from a psychiatric disorder, but deliberately ignored that condition and refused to treat him or to release him from administrative segregation. Thus, there is no evidence that the defendants acted unreasonably under the circumstances. Absent a showing that the defendants' actions violated a constitutional right that was clearly established, or that the defendants' conduct was objectively unreasonable in light of clearly established precedent, Rodriguez fails to raise a genuine issue of material fact on whether the defendants are entitled to qualified immunity. The defendant's motion for summary judgment on this issue therefore is granted.

### C.   Remaining Defendants

The complaint filed by Rodriguez also names TDCJ Director Doug Dretke, "Medical Complaint Coordinator" Jason Chavers, and Medical Director Glenda Adams. All of these individuals apparently occupy supervisory positions and are alleged to have only indirect

involvement in the incident giving rise to Rodriguez's complaint.  For reasons explained briefly below, Rodriguez has failed to state a valid claim against these individuals.

A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).  Supervisory officials can only be held liable if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.  *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.").  Supervisory liability exists without overt personal participation in an offensive act only if supervisory officials implement a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Id.* at 304 (quoting *Granstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985)), *cert. denied*, 480 U.S. 916 (1987).

In this instance, the pleadings filed by Rodriguez fail to allege or otherwise articulate facts showing that Dretke, Chavers, or Adams had any direct personal involvement with the incidents forming the basis of his complaint, or that there was any causal connection between these defendants and any alleged wrongful conduct.  In that respect, it is not alleged that these supervisory officials were aware of, but deliberately disregarded, a serious medical or

psychiatric condition or that they thereby violated Rodriguez's constitutional rights by failing or refusing to expedite his participation in the GRAD program. The plaintiff's conclusory allegations are insufficient to state a claim against these defendants. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Fee v. Herndon*, 900 F.2d 804 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990). Rodriguez has failed for reasons outlined above to establish that his constitutional rights were violated. Accordingly, Rodriguez's complaint against Dretke, Chavers, and Adams fails to state a claim upon which relief can be granted.

## IV. CONCLUSION AND ORDER

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1.   The defendants' motion for summary judgment (Docket Entry No. 10) is **GRANTED**.

2.   This case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **October 27, 2005.**

Nancy F. Atlas
United States District Judge